680 F.2d 1234
 SPERRY CORPORATION AND ITS SPERRY UNIVAC DIVISION, Appellant,
v.
CITY OF MINNEAPOLIS and Burroughs Corporation, Appellees,
v.
SPERRY CORPORATION AND ITS SPERRY UNIVAC DIVISION,
v.
BURROUGHS CORPORATION.
 No. 81-2244.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 17, 1982.
Decided June 24, 1982.
 
 Stolpestad, Brown & Smith, Professional Ass'n, Russell C. Brown, Edward F. Fox, Thomas F. Surprenant, St. Paul, Minn., for appellant.
 Henson & Efron, P. A., Robert F. Henson, Stuart T. Williams, Minneapolis, Minn., for Burroughs Corp., Minneapolis, Minn.
 Robert J. Alfton, City Atty. by Paul T. Aitken, Asst. City Atty., Minneapolis, Minn., for City of Minneapolis.
 Before ROSS, ARNOLD and JOHN R. GIBSON, Circuit Judges.
 ROSS, Circuit Judge.
 
 
 1
 Sperry Univac (Sperry) appeals from the district court's[1] refusal to modify its prior injunction which prohibited the City of Minneapolis (City) and Burroughs Corporation (Burroughs) from contracting for the City's acquisition of a data processing system from Burroughs. Sperry moved for a modification which would prohibit a settlement agreement between the City and Burroughs. We find no abuse of discretion on the part of the district court and accordingly affirm its judgment.
 
 FACTS
 
 2
 In July 1980, Sperry and Burroughs and two other computer companies bid to provide the City with data processing equipment to replace the City's current Burroughs 4704 system. Bids provided for delivery and installation no later than July 15, 1981, and included a $100,000 deposit as liquidated damages in the event that bid requirements were not met. Burroughs' bid for its B3950 computer was the low bid and was accepted by the City.
 
 
 3
 Contract negotiations between the City and Burroughs eventually began to deteriorate and on April 14, 1981, the City demanded that Burroughs perform benchmark and performance tests to prove the viability of the B3950 system. Burroughs notified the City on May 8, 1981, that the B3950 was unavailable for testing and offered to substitute its B4800 system. The City declared Burroughs in default and breach of contract on May 22, 1981. The City further notified Burroughs that by reason of its default Burroughs was disqualified from any future bidding with the City. The City and Burroughs continued to negotiate to substitute a B4890 for the B3950 originally bid.[2]
 
 
 4
 On July 31, 1981, the City declared an emergency due to its inadequate computer capacity and contracted with Burroughs for a B4890 without compliance with the competitive bidding statutes. Sperry sued to enjoin the City's acquisition of the B4890 arguing that there was no legitimate emergency and that the City should be required to comply with the bidding statutes.
 
 
 5
 The district court entered an order on August 25, 1981, enjoining the City and Burroughs from "negotiating, entering or executing a contract for the installation and operation of a Burroughs 4800 data processing system" without complying with competitive bidding statutes. The court held that because Burroughs' default in providing the B3950 was reasonably foreseeable the evidence did not establish the existence of an emergency. The district court specifically stated that it did not ascribe ulterior motives to either defendant but found that the City knew or could have known as early as autumn of 1980 that Burroughs would be unable to comply with the terms of its bid.
 
 
 6
 On October 16, 1981, the City moved for a modification of the injunction to permit the City and Burroughs to carry out a settlement agreement which provided that the City would release its claims against Burroughs and rescind its May 22 resolution that Burroughs was disqualified from further bidding with the City in exchange for free use of a B4890 for one year. Sperry opposed the motion contending that defendants were trying to acquire by settlement agreement the B4890 which the court had held could not be acquired except through compliance with competitive bidding laws. The district court denied the motion to modify the injunction on October 28, 1981, and held that the settlement agreement was not a contract within the purview of the competitive bidding statutes and thus did not violate the injunction.
 
 
 7
 Sperry then moved to modify the prior injunction to prohibit the City from entering into the settlement agreement. Sperry's motion was denied. The B4890 was installed and is currently being operated by the City. The settlement agreement expires in November 1982, at which time the City will accept bids to replace the equipment.
 
 APPEALABILITY
 
 8
 The initial question to be addressed by this court is whether the district court's ruling is appealable. Sperry appeals from the district court's order denying its motion to modify the injunction. Such an order is appealable under 28 U.S.C. § 1292(a)(1) as an order refusing to modify an injunction. Hyde Construction Co. v. Koehring Co., 388 F.2d 501, 505 (10th Cir.), cert. denied, 391 U.S. 905, 88 S.Ct. 1654, 20 L.Ed.2d 419 (1968).
 
 
 9
 There is some question whether in substance the district court's order was merely an interpretation of its prior injunction. Such orders are not final appealable orders. The Fourth Circuit has held in Major v. Orthopedic Equipment Co., 561 F.2d 1112, 1115 (4th Cir. 1977) that where the court's order "did no more than find Major had violated the prior injunction" and did not direct any action the order was not final and was not appealable. In Major the parties moved for clarification of the injunction, which motion the Fourth Circuit held was not a motion to modify the injunction.
 
 
 10
 The Second Circuit has similarly held that a supplemental order allowing a receiver to disburse money in accordance with provisions of a prior injunction was not a final appealable order because it did not modify the injunction. IIT v. Vencap, Ltd., 519 F.2d 1001 (2d Cir. 1975). The court held that the parties "cannot now appeal from an order which has neither further modified the terms of the preliminary injunction nor the powers of the receiver, but which merely permits an expenditure in accordance with the provisions of these previous orders." Id. at 1020 (footnote omitted).
 
 
 11
 In the present case the City moved for a modification of the district court's order to allow the City to acquire the B4890 through the settlement agreement without compliance with the competitive bidding statutes. The court stated that the "central issue is whether the agreement violates the August 25, 1981, Order." The court held that the order had not been violated because the competitive bidding statutes were inapplicable to the proposed settlement agreement because the agreement did not provide for the expenditure by the City of any public monies. The district court held that "(s)ince the proposed settlement complies with this Court's previous Order, it is unnecessary to modify that Order at this time."
 
 
 12
 We hold that the order denying the motion to modify the injunction is a final appealable order because it continues the enforcement of a prior injunction. Miller v. Carson, 563 F.2d 757, 762 (5th Cir. 1977). The district court's interpretation of its prior order is properly characterized as a denial of a motion to modify an injunction and thus is properly appealable under 28 U.S.C. § 1292(a)(1). This approach comports with the rule stated in Cohen v. Beneficial Loan Corp., 337 U.S. 541, 546-47, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949) that an order is appealable that "is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it."
 
 STANDARD OF REVIEW
 
 13
 The standard to be applied by the district court in determining whether an injunction should issue was recently established in this circuit by Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 114 (8th Cir. 1981):
 
 
 14
 (W)hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.
 
 
 15
 On review, "the grant or denial of a preliminary injunction may be reversed only if, under the applicable standard, the trial court abused its discretion or based its decision on an erroneous legal premise." Chromalloy American Corp. v. Sun Chemical Corp., 611 F.2d 240, 244 (8th Cir. 1979); see also Doran v. Salem Inn, Inc., 422 U.S. 922, 931-32, 95 S.Ct. 2561, 2567-68, 45 L.Ed.2d 648 (1975); Planned Parenthood v. Citizens for Com. Action, 558 F.2d 861, 866 (8th Cir. 1977). We find that the district court properly applied the Dataphase criteria. We affirm the district court's refusal to modify its prior injunction.[3]
 
 DATAPHASE ANALYSIS
 A. Threat of Harm to Parties
 
 16
 Sperry argues that it sues as a frustrated bidder and as a taxpayer and that to allow the City and Burroughs to complete their settlement agreement would be harmful to taxpayers because such action would circumvent the competitive bidding statutes which were enacted to protect the public from unfair or illegal contract letting. The City argues that an injunction against the implementation of the settlement agreement would be extremely costly to the City in terms of computer shutdown time and conversion costs. We find no abuse of discretion in the district court's determination that the threat of harm to the City outweighed the threat of harm to Sperry.
 
 B. Public Interest
 
 17
 The public interest in prompt and efficient settlement of the City's contract disputes is obvious, as is the interest in efficient performance of vital governmental functions. The City has demonstrated that the lack of data processing facilities would severely disrupt governmental operations. The district court did not abuse its discretion in determining that the public interest in settlement of contract disputes and in efficient performance of governmental operations was sufficiently important to warrant enforcement of the proposed settlement agreement.
 
 C. Probability of Success on the Merits
 
 18
 It is Sperry's burden to show some likelihood of prevailing on the merits of its claim that a municipality cannot settle its contract disputes without complying with competitive bidding statutes. The strength of this showing varies depending on the weight of the other three elements listed in Dataphase but absent some showing of probability of success an injunction will not issue. Dataphase Systems, Inc. v. C L Systems, Inc., supra, 640 F.2d at 113.
 
 
 19
 Sperry argues that the district court erred in ruling that the proposed settlement agreement was not a contract within the meaning of the competitive bidding statutes. The district court determined that under Minnesota law the competitive bidding laws did not include an agreement in settlement of a contract dispute which did not require expenditure of public monies.
 
 
 20
 We have carefully reviewed applicable Minnesota case law and find it to be inconclusive. Both parties concede that the Minnesota courts have not addressed the question of whether a settlement agreement is a contract as contemplated by the competitive bidding laws. In the absence of controlling state law "it is the duty of a federal court to apply the rule it believes the state supreme court would follow. Further, this court accords great weight to the conclusions of the local trial judge on questions of state law (citation omitted)." Garoogian v. Medlock, 592 F.2d 997, 1000 (8th Cir. 1979); Grenz Super Valu v. Fix, 566 F.2d 614, 615 (8th Cir. 1977). We do not find the district court's interpretation of state law to be "deficient in analysis or otherwise lacking in reasoned authority." Ancom, Inc. v. E. R. Squibb & Sons, Inc., 658 F.2d 650, 654 (8th Cir. 1981).
 
 
 21
 The district court held that the proposed settlement agreement was not a contract within the meaning of Minn.Stat. § 471.345 (1977) because the settlement did not involve an expenditure of public monies and was not for the sale or purchase of equipment. Section 471.345 states in relevant part:
 
 
 22
 A "contract" means an agreement entered into by a municipality for the sale or purchase of supplies, materials, equipment or the rental thereof, or the construction, alteration, repair or maintenance of real or personal property.
 
 
 23
 We hold that "(i)n light of the restrictive interpretation given by courts to competitive bidding statutes and the ease with which the legislature could have included such" contracts within the definition contained in section 471.345, the district court did not err in determining that the settlement agreement was not a contract prohibited by the injunction. R. E. Short Co. v. City of Minneapolis, 269 N.W.2d 331, 343 (Minn.1978).
 
 FURTHER PROCEEDINGS
 
 24
 We affirm the district court's refusal to modify its injunction and remand this case to the district court for proceedings consistent with this opinion and for the further purpose of considering an additional issue raised by Sperry. Sperry argues that the City's action in installing Burroughs' equipment has served to give Burroughs a "lock-in" advantage over all other competitors. Therefore, Sperry argues although the City will be seeking new bids for its computer facilities when the settlement agreement expires in November 1982, no other computer company will be able to successfully bid against Burroughs.
 
 
 25
 This court is aware that the "incumbent" will always have a slight advantage over its competitors but in the present situation Burroughs' advantage may be unfair. For example, at oral argument the City stated that there may not be sufficient time between now and November 1982 for any company but Burroughs to install data processing equipment. Additionally, if the City does not require all bidders to provide a state of the art data base, Burroughs will not have the additional cost of conversion that its competitors will suffer.
 
 
 26
 We remand this case to the district court for a review of the City's forthcoming bid specifications to determine whether there is an unfair advantage given to Burroughs, above the built-in advantage Burroughs has by reason of being the "incumbent."
 
 
 27
 Affirmed and remanded with additional instructions to the district court to review the City's bid specifications.
 
 
 
 [1]
 The Honorable Robert G. Renner, United States District Judge for the District of Minnesota
 
 
 [2]
 The B4890 is one computer in the B4800 line
 
 
 [3]
 Defendants argue this case is moot because the activity sought to be enjoined has already occurred and can no longer be prevented. City of Romulus v. County of Wayne, 634 F.2d 347, 349 (6th Cir. 1980). We find this argument to be without merit as the computer equipment could have been removed and replaced had the trial court determined that the injunction should have been modified in a way which would have prohibited the settlement agreement