MOVIE SYSTEMS, INC., an Iowa corporation, Appellee,

v.

MAD MINNEAPOLIS AUDIO DISTRIBUTORS, A DIVISION OF SMOLIAK & SONS, INC., a Minnesota corporation, and of Video Club, Inc.; and Gary Smoliak, Appellants.

No. 82–1799.

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1983.

Decided Sept. 2, 1983.

Marc G. Kurzman, Kurzman, Shapiro, Manahan & Partridge, Minneapolis, Minn., Jonathan T. Howe, Joseph L. Nellis, Washington, D.C., for appellants.

Thomas A. Keller, III, Robert A. Brunig, O'Connor & Hannan, Minneapolis, Minn., for appellee; Raymond W. Conley, General Counsel, Des Moines, Iowa, of counsel.

Before ROSS and JOHN R. GIBSON, Circuit Judges, and ROBERTS,* District Judge.

JOHN R. GIBSON, Circuit Judge.

MAD Minneapolis Audio Distributors and its manager, Gary Smoliak, appeal from the district court[1] order denying Movie Systems' motion for adjudication of civil contempt. Appellants principally contend that (1) the order modifies, rather than clarifies, a prior injunction by eliminating its conditions and making the injunction absolute; (2) the modification was improperly granted in the absence of changed circumstances and without an evidentiary hearing; and (3) the modified injunction violates the specificity requirements of Fed.R.Civ.P. 65(d). We affirm the order of the district court.

Appellee Movie Systems, Inc., a licensee of Home Box Office (HBO), has the exclusive right to distribute HBO's television entertainment service to paying subscribers in the metropolitan Minneapolis-St. Paul area. To receive the HBO signal, subscribers are provided with special antennas and down-converters to connect to their television sets. In March 1982, however, appellants MAD and Gary Smoliak and others advertised and sold microwave antenna systems that enabled homeowners to intercept Movie Systems' HBO programming.

On April 28, 1982, Movie Systems commenced an action in the district court, alleging that MAD, Smoliak, seven other dealers and their managers[2] had violated 47 U.S.C. § 605, 47 C.F.R. § 21.903, 18 U.S.C. § 2511, and Minn.Stat. § 626A.01–.23, had engaged in unfair competition, and had been unjustly enriched by selling microwave antennas and down-converters. The defendants counterclaimed, alleging that Movie Systems had violated sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1–2, and section 3 of the Clayton Act, 15 U.S.C. § 14, by establishing and seeking to enforce illegal tie-in arrangements relative to the ownership of receiving antennas, and that Movie Systems had violated defendants' constitutional rights and had engaged in defamatory conduct.

On May 28, 1982, Movie Systems moved for a preliminary injunction. Movie Systems, MAD, and Smoliak submitted the matter to the court on affidavits. On June 11, 1982, the district court heard oral argument. Later that day the district court entered an order granting the motion. The court concluded that Movie Systems had met its burden of establishing the prerequisites for the issuance of a preliminary injunction, and found that it had demonstrated a likelihood that it will establish certain facts, including:

> gg. The designed and intended use of the microwave antennas sold by the above-named defendants is to receive [Movie Systems'] HBO programming. Although these microwave antennas have other limited uses besides receptions of HBO programming, the use for which Defendants were and are selling

---

\* The Honorable Ross T. Roberts, United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable Earl R. Larson, United States Senior District Judge for the District of Minnesota.

2. The other defendants were dismissed by orders entered July 15 and 20, 1982.

the equipment was not and is not for such uses.

The June 11 order enjoined defendants from:

(1) Interfering with, interrupting, intercepting, receiving, divulging or using programming transmitted by Plaintiff Movie Systems, Inc., without its authorization;

(2) Assisting, aiding, abetting or conspiring with any other person to intercept, receive, divulge or use programming transmitted by Plaintiff Movie Systems, Inc., without its authorization;

(3) Manufacturing, selling, installing, possessing, purchasing, distributing, leasing, marketing, furnishing, advertising or offering for sale or installation equipment, parts and components thereof, or plans to construct such equipment, if such equipment, parts or plans are capable of, or could be used in intercepting programming transmitted by Plaintiff Movie Systems, Inc., or assisting others in such activities, if:

(a) He, she, it or they advertise or communicate, either orally or in writing, that his, her, its or their product is capable of or could be used in the interception, reception or use of any programming transmitted by Plaintiff Movie Systems, Inc., or of Home Box Office programming; or

(b) He, she, it or they know or have reason to believe that a purchaser, distributee or lessee in acquiring the product from him, her, it or them, acquires it with the intent of intercepting, receiving or using programming transmitted by Plaintiff Movie Systems, Inc., or Home Box Office programming.

On June 18, 1982, Movie Systems filed a motion for adjudication of civil contempt together with supporting affidavits. A hearing on the contempt motion was held on June 22, 1982, with defendants supplying the court with affidavits in opposition. That same day, the district court issued an order denying the motion, stating:

After consideration of the arguments of counsel at the hearing this morning as well as their written submissions to the record, the Court believes that the difficulties that have led to plaintiff's motion for an adjudication of civil contempt can best be resolved by a statement of clarification on the correct interpretation of the Court's preliminary injunction.

Among other things, the preliminary injunction orders defendants to refrain from sales of the electronic devices in question if they "know or have reason to believe" that the person acquiring the product intends to use it for receiving plaintiff's programming. The affidavits on file demonstrate that there has been extensive advertising as well as news media coverage of the capabilities of the equipment supplied by defendants. Also, the Court has found that "[a]lthough these microwave antennas have other limited used [sic] besides reception of HBO programming, the use which Defendants were and are selling the equipment was not and is not for such uses." It is apparent that defendants should "know" or at least "have reason to believe" (emphasis added) that a person acquiring the equipment from them has the intent of receiving plaintiff's programming. Thus, the preliminary injunction prohibits all sales by defendants of equipment having this capability. Similar analysis would apply to the other activities that are prohibited by the preliminary injunction.

This appeal from the June 22 order followed.

## I. Jurisdiction

Movie Systems argues that this court lacks jurisdiction to consider the appeal directed against the June 22 order of the district court, which by its terms was a clarification of the preliminary injunction, and not an order granting, continuing, or modifying an injunction within the meaning of 28 U.S.C. § 1292(a)(1).

The preliminary injunction of June 11, 1982 prohibited sales of equipment with the capability of intercepting programs trans-

mitted by Movie Systems *if* MAD and the other defendants (1) advertised or communicated that the product was capable of or could be used in interception or reception of Movie Systems' programming, or (2) knew or had reason to believe that a purchaser was acquiring the product with the intent of intercepting or receiving Movie Systems' programming. The June 22 order referred to the finding in the June 11 order that while the microwave antennas had other limited uses besides reception of Movie Systems' programming, MAD and the other defendants were not selling such equipment for such uses. Based on this finding and the affidavits on file, the district court concluded that the defendants should know or at least have reason to believe that a person purchasing the equipment has the intent of receiving Movie Systems' programming. The court then ordered the prohibition of all sales by defendants of equipment having this capability.

■ We think it evident that the June 22 order expands and modifies the June 11 preliminary injunction by eliminating its two stated conditions and by making the prohibition on sales absolute. This would bring the June 22, 1982 order within the plain language of 28 U.S.C. § 1292(a)(1) as it modifies the preliminary injunction.[3] It is also abundantly clear that the June 22, 1982 order continues enforcement of the injunction of June 11, 1982 and in this additional respect falls within the plain language of 28 U.S.C. § 1292(a)(1). *See Sperry Corp. v. City of Minneapolis,* 680 F.2d 1234, 1237 (8th Cir.1982).

■ Movie Systems argues that there was not a motion to modify the preliminary injunction before the court, and thus the June 22 order could not properly be characterized as denial of a motion to modify an injunction to bring it within the language of the statute. The district court, however, found that the motion for contempt could

best be dealt with by issuing the order it termed a clarification. We do not believe that the action of the district court was unresponsive to the relief sought by Movie Systems, and we reject its arguments that the June 22 order was not a modification of the earlier preliminary injunction.

## II. The June 22 Order
### A.

Relying on *United States v. Swift,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932) and *Humble Oil & Refining Co. v. American Oil Co.,* 405 F.2d 803 (8th Cir.), *cert. denied,* 395 U.S. 905, 89 S.Ct. 1745, 23 L.Ed.2d 218 (1969), MAD contends that the modification of the preliminary injunction required a strong showing of new conditions and circumstances making the original injunction oppressive, and that the evidence before the district court was insufficient to justify the modification. The cases cited, however, deal specifically with the modification of a final injunctive decree, not with a preliminary injunction as involved in this case. In modifying a preliminary injunction, a district court is not bound by a strict standard of changed circumstances but is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law, or for any other good reason. *See generally* 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 65.07 (2d ed. 1982); [Interim Binder] *Federal Procedure, Lawyers Edition* § 47.61 (1981).

■ We regard the supporting affidavits that were filed with the motion for civil contempt on June 18 as providing a sufficiently good reason for modifying the June 11 injunction. One of the affidavits attached a newspaper article[4] of an interview with MAD's counsel, Marc Kurzman, with direct quotations that his clients would continue to sell the antennas, but without reference to HBO. The affidavits further revealed that MAD continued its sales efforts

---

**3.** Movie Systems conceded as much at oral arguments when it stated, "[W]e were looking for a contempt hearing .... I think it's fair to say ... [we] were all surprised to get a modification."

**4.** *Lawyer Cites Loophole for 'HBO Antenna' Sales,* Minneapolis Star & Tribune, June 16, 1982, at 1C.

after the June 11 order. When one of MAD's employees was approached by a Movie Systems' employee who posed as a customer and who asked for an HBO antenna, the MAD employee said he could not sell him one then but encouraged the customer to come back another day and to state an innocuous reason. On another occasion, when a Movie Systems' employee asked to purchase an HBO antenna, MAD responded by informing the customer of distance and line-of-sight requirements in relation to the microwave transmitter which is located atop the IDS Tower and which transmits Movie Systems' HBO programming, and by referring the customer to another sales location for the purchase.

This elaborate winking process is not contradicted by defendants' affidavits. Rather, they uniformly establish the continued sale of antennas and down-converters in a studied effort to fall within the conditions of the June 11 order so as to minimize its effects. The affidavit of Marc Kurzman, counsel for MAD, attempted to correct certain statements appearing in the newspaper article in question, but did not dispute the continuing sales of equipment within the conditions set forth in the June 11 order. Kurzman's affidavit made plain that he had discussed the June 11 order with his clients and that he instructed them that they could sell the antennas to "all but those people they knew, or should know, intended to use same to intercept HBO/MSI programming."

The remainder of defendants' affidavits illustrate further the nature of the sales efforts that were made. Carl Hartell, manager of Communications Center in Minneapolis, admitted telling customers who did not request information about HBO that they would not get into trouble for using a multipurpose microwave antenna and instructed potential customers in its multiple uses; moreover, when asked what would happen if "the signal" were scrambled, the affiant responded "with words to the effect that it would cost them 'beaucoup bucks' to scramble a signal." The affidavit of Peter Vitale, owner of Vitale TV & Stereo Co. in St. Paul, disclosed that he placed a sign in

his store warning customers that he sold "multipurpose microwave antennas" rather than "HBO antennas" and that "[i]f the customer says he or she is going to use the antenna for HBO, we will not sell it to him." Finally, in an interview attached to Gary Smoliak's affidavit, an employee of MAD stated, "We were told that we could not sell the microwave antennas to any person who made it known that they were going to use it for the purpose of receiving HBO [but] if someone asked us for [a] microwave antenna, they could purchase one."

It is evident that this pattern of sales activities prompted the district court to re-examine its earlier findings in the June 11 order and to conclude that a clarification of the preliminary injunction—which we believe to be a modification of the injunction—was in order. The district court was justified in considering the post-June 11 activities of MAD, Smoliak, and the other defendants, and we find no abuse of discretion in the entry of the June 22 order. *See Medtronic, Inc. v. Gibbons,* 684 F.2d 565, 567 (8th Cir.1982).

### B.

■ MAD also argues that the June 22 order improperly modifies an injunction without an evidentiary hearing because affidavits were presented contradicting the assumption of a sole use for the antennas. In so arguing, it is evident that the source of MAD's complaint is the district court's finding in paragraph gg of the June 11 order that the designed and intended use of defendants' equipment was solely to receive Movie Systems' HBO programming. The district court entered the June 11 order after considering the affidavits submitted by both parties, and a videotape offered by MAD. Counsel for MAD was twice asked and confirmed that he intended to submit his case by affidavit. Having willingly submitted affidavits which MAD knew or should have known to be in conflict at the time of the June 11 hearing—as all the affidavits were then on file—and having filed no appeal from the June 11 order, MAD cannot now be heard to complain about factual findings made at that time.

With respect to the affidavits filed for and against the motion for civil contempt, discussed above, we do not understand MAD to argue that a material factual controversy exists. Although MAD did raise an issue of contrary affidavits during the contempt hearing, it has failed to follow up and urge any conflict in these affidavits on appeal.[5] On the issue of continuing sales activities, which is the limited issue before us, we do not find these affidavits contradictory so as to require an evidentiary hearing. We have earlier said:

> By its nature, an application for a preliminary injunction often requires an expeditious hearing and decision. In order to overcome the problems that would be created in attempting to gather the necessary witnesses, it has often been held that affidavits may be received at a hearing on a motion for a preliminary injunction.

*Wounded Knee Legal Defense/Offense Committee v. Federal Bureau of Investigation,* 507 F.2d 1281, 1286–87 (8th Cir.1974). Accordingly, we find no impropriety in the district court's reliance on these affidavits.[6]

### C.

█ MAD's further argument that the June 22, 1982 order lacks specificity is without merit. The order prohibits "all sales by defendants of equipment having [the] capability" of receiving HBO programming, and thus gives explicit notice of precisely what conduct is forbidden. That is all that is required. *See Schmidt v. Lessard,* 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L.Ed.2d 661 (1974) (per curiam).

We have carefully reviewed MAD's remaining arguments, including the applicability of *James River Flood Control Association v. Watt,* 680 F.2d 543 (8th Cir.1982) (per curiam), to the modification of a preliminary injunction, and find them all to be without merit. Other issues raised for the first time at oral arguments will not be considered.

### III. Conclusion

A recitation of the procedural history of this case with the preliminary injunction of June 11, the order of June 22 modifying its scope, and the hearing of June 25 to stay enforcement of the injunction pending appeal, provides an example of how extended procedural maneuvers delay the ultimate decision of whether a permanent injunction should issue. We feel it appropriate that the district court schedule a hearing on the permanent injunction at the earliest possible time.

---

**5.** Moreover, at no time during the June 22 hearing did MAD ask to present testimony although it did refer to a hearing on its motion for judgment on the pleadings which was to be scheduled on the following Monday. The district court specifically referred to a conflict in the affidavits insofar as it related to contempt and suggested that testimony be taken because of the conflict. Movie Systems' counsel commented upon witnesses being available in the courtroom, but MAD's counsel made no such statements. When the parties appeared before the district court on June 25, 1982, the subjects of discussion were primarily the timeliness of Movie Systems' response to MAD's motion for judgment on the pleadings, and the requirements for issuing a stay pending appeal. Although counsel for MAD made brief reference to the court's lack of opportunity to hear witnesses because of scheduling problems, this ignores the fact that he failed to make a timely request for an evidentiary hearing at either the June 11 or June 22 proceedings. The district court observed that the June 22 order was made to prevent the necessity of extended contempt hearings which might result in fines or imprisonment for defendants found in contempt.

**6.** In a supplemental letter to the court following oral arguments, counsel for MAD advised the court of additional case law which he argued prohibits the issuance of a preliminary injunction without an evidentiary hearing. *Medeco Security Locks, Inc. v. Swiderek,* 680 F.2d 37, 38 (7th Cir.1981) (per curiam); *Forts v. Ward,* 566 F.2d 849, 851 (2d Cir.1977); *Marshall Durbin Farms, Inc. v. National Farmers Org., Inc.,* 446 F.2d 353, 356 (5th Cir.1971); *Consolidated Coal Co. v. Disabled Miners of S.W. Va.,* 442 F.2d 1261, 1269–70 (4th Cir.), cert. denied, 404 U.S. 911, 92 S.Ct. 228, 30 L.Ed.2d 184 (1971); *Detroit & Toledo Shore Line R.R. v. Brotherhood of Locomotive Firemen & Enginemen,* 357 F.2d 152, 153–54 (6th Cir.1966); *Sims v. Greene,* 161 F.2d 87, 88 (3d Cir.1947). We have carefully reviewed these cases from other circuits and do not find them to be persuasive under the facts presented here.

The order of the district court is affirmed.