Joyce **LOUDNER,** Ambrose **McBride, Chauncey Long Crow, Della Lytle, Hilda Long Crow, Lisa Redwing, Horace Gilbert Slow, Darlene Fallis Jones, Lyle Medicine Crow, Ramona Estes, Fay Jandreau, Norman V. Taylor, and Kathryn Ratliff, Plaintiffs,**

v.

**UNITED STATES of America, and Gale Norton, individually and in her capacity as Secretary of the Interior, Defendants.**

No. Civ 94–4294.

United States District Court,
D. South Dakota,
Southern Division.

April 24, 2002.

See also 108 F.3d 896.

Michael Charles Abourezk, Abourezk Law Offices, Rapid City, SD, Charles Rick Johnson, Stephanie E. Pochop, Johnson, Eklund, Nicholson & Peterson, Gregory, SD, for plaintiffs.

Jan L. Holmgren, Assistant United States Attorney, U.S. Attorney's Office, Sioux Falls, SD, for defendants.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

The defendants filed a Motion to Modify Injunction, Doc. 226, requesting that the preliminary injunction in this action be modified to allow a partial distribution of the Judgment Fund to the group of lineal descendants found eligible prior to 1994 to share in the Judgment Fund. The plaintiffs filed a Response to the motion stating they have no objection to dissolution of the injunction as to the .1,988 *LeBeau* plaintiff group and retaining the preliminary injunction as to the remainder of the Judgment Fund. The motion will be granted.

The Court originally issued a preliminary injunction in this case on January 6, 1995, enjoining defendants from distributing the Judgment Fund[1] at issue in this lawsuit owed lineal descendants of the Sisseton–Wahpeton Sioux pursuant to the decision in *Sisseton–Wahpeton Bands or Tribes v. United States,* 18 Ind.Cl.Comm. 526–1. (Doc. 12.) The preliminary injunction was dissolved on October 13, 1995, following the Court's dismissal of this action as time-barred. (Doc. 28.) The United States Court of Appeals for the Eighth Circuit reversed the dismissal and rein-

---

1. A detailed description of the history of this case and the Judgment Fund at issue is contained in the Court's Memorandum Opinion and Order, Doc. 58, dated December 19, 1997.

stated this action in *Loudner v. United States,* 108 F.3d 896 (8th Cir.1997). On April 28, 1998, the Court reinstated the preliminary injunction and enjoined defendants from distributing the Judgment Fund. (*See* Order Granting Preliminary Injunction, Doc. 66.)

Defendants request that the preliminary injunction be modified to allow them to make a partial payment of the Judgment Fund to lineal descendants who were notified they were eligible to share in the Judgment Fund prior to the initiation of the present lawsuit in 1994. When the present lawsuit was filed, there were 1,988 lineal·descendants who had been notified they were eligible to share in the Judgment Fund. This group of 1,988 lineal descendants is often referred to by the parties as the *"LeBeau"* plaintiffs or group because two of the lineal descendants (Casimir LeBeau and Vernon Ashley) in that group filed a lawsuit on May 27, 1999 alleging a breach of trust for delay in distributing the Judgment Fund and challenging a 1998 Act that reapportioned approximately 28 per cent of the Judgment Fund from the lineal descendants to the three Tribes[2] also entitled·to share in the Judgment Fund pursuant to the 1972 Distribution Act, Pub.L. No. 92–555, 86 Stat. 1168. *See LeBeau v. United States,* CIV 99–4106 (D.S.D.); 25 U.S.C. § 1300d–26(c) (2001).

The two plaintiffs in the *LeBeau* action submitted their applications in 1973 prior to the expiration of the first deadline and were notified in 1979 that they were eligible to share in the Judgment Fund. They have been waiting almost 30 years from the time they submitted their applications and approximately 23 years from the time they were officially notified they were eligible to share in the Judgment Fund. Defendants state that if the pre-

liminary injunction is modified expeditiously as requested, partial payment could be made to the *LeBeau* group by mid-July 2002. The reasons for requesting that the injunction be modified to allow payment to the *LeBeau* group and not to the *Loudner* group are: 1) the list of the *LeBeau* group has already been compiled and only needs updating, but no list has been compiled for the *Loudner* group; 2) the *LeBeau* group was notified of eligibility and has been waiting for payment since 1979, but, with a few exceptions, the *Loudner* group did not know of the existence of the Judgment Fund until the application process was reopened and none of them have been notified of their eligibility; 3) the *LeBeau* group has a finite eligibility determination date compared to the *Loudner* group that would require an .arbitrary cutoff date for partial payment eligibility because not all applications have been processed; and 4) if the *Loudner* group was included in the partial distribution, the projected date for partial payment would be much later than July 2002 because defendants would need to notify lineal descendants of their eligibility, create a list of payees and calculate a cutoff date.

■ The Eighth Circuit explained that, "[i]n modifying a preliminary injunction, a district court is not bound by a strict standard of changed circumstances but is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law, or for any other good reason." *Movie Systems, Inc. v. MAD Minneapolis Audio Distributors,* 717 F.2d 427, 430 (8th Cir. 1983).

Defendants represent to the Court that the calculation of the partial payment to the *LeBeau* group will reserve sufficient funds to pay the Tribes pursuant to the

---

**2.** The three tribes are the Sisseton–Wahpeton Sioux Tribe, the Spirit Lake Tribe and the

Sisseton–Wahpeton Sioux Council of the Assiniboine and Sioux Tribes.

1998 Act and to pay the *Loudner* group when all of the applications have been processed and the list of eligible lineal descendants is finalized. There were 12,-386 applications submitted during the reopening of the application deadline and defendants'. calculation will reserve sufficient funds to pay 100 per cent of those lineal descendants, even though a significant portion of those applications have already been determined to be ineligible. Thus, the Court finds that there is no longer a threat of irreparable harm from a partial payment to the *LeBeau* group and the preliminary injunction will be vacated to that extent. In reaching this decision, the Court considered both the standard for modification of a preliminary injunction and the four-part test for initially granting a preliminary injunction established in *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109 (8th Cir.1981) (en banc) and concluded that on balance the factors weigh toward vacating the preliminary injunction as to the *LeBeau* group.

 In considering whether to initially grant a preliminary injunction, the Court is to consider "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* at 113. As mentioned above a partial payment to the *LeBeau* group will not result in irreparable harm. The Court recognizes that there is a potential for harm to the Tribes and the *Loudner* group from the requested modification, because the money that is paid to the *LeBeau* group will no longer be accruing interest from the time of the partial payment to the date of final distribution of the Judgment Fund. Thus, the Tribes' and the *Loudner* group's respective shares of the final distribution will be lessened to the extent that the Fund will not have accrued interest on the

partial payment amount. The state of balance between the harm to the Tribes and the *Loudner* group compared to the harm to the *LeBeau* group, however, weighs heavily in favor of granting the requested modification. While the Tribes and the *Loudner* group may not collect a share of the interest that could be earned on the *LeBeau* group's share of the Fund that is paid. out in the partial payment, the *LeBeau* group has been waiting to receive payment for approximately 30 years from the 1972 Act granting the lineal descendants 25 per cent of the Judgment Fund and nearly 23 years from being officially notified they were eligible to share. The merits of each interested parties' claims to the Judgment Fund have been decided by this Court, but the Eighth Circuit Court of Appeals has not yet considered whether the 1998 Act is unconstitutional as claimed by the *LeBeau* plaintiffs. The public interest weighs heavily in favor of granting the requested modification. The two plaintiffs, Casimir LeBeau and Vernon Ashley, in the *LeBeau* action are 84 and 86 years old respectively, and many of the other eligible lineal descendants are elderly. The factors to be considered in initially granting a preliminary injunction weigh in favor of granting the requested modification. In conclusion, it is equitable and there is good reason to modify the injunction as requested given that the *LeBeau* group has been waiting for payment for nearly 23 years from being officially notified they were eligible to share in the Judgment Fund and there are no further legal or factual barriers to such a payment. Accordingly,

IT IS ORDERED:

1. That defendants' Motion to Modify Injunction, Doc. 226, is granted.

2. That the preliminary injunction entered by the Court on April 28, 1998 in the Order Granting Preliminary Injunction, Doc. 66, is modified as follows:

that defendants, their officers, agents, servants, employees, attorneys and all other persons in active concert or participation with them are enjoined from distributing settlement owed lineal descendants of the Sisseton–Wahpeton Sioux pursuant to *Sisseton and Wahpeton Bands or Tribes v. United States,* 18 Ind.Cl.Comm. 526–1, except that defendants may distribute a partial payment to the 1,988 lineal descendants determined eligible prior to 1994, reserving sufficient funds to pay the lineal descendants determined eligible from 1994 to the date of total distribution and to pay the reallocated portion of the Judgment Fund pursuant to 25 U.S.C. § 1300d–23 (2001).