UNITED STATES of America

v.

WESTERN ELECTRIC COMPANY, INC., et al., US West, Inc., Appellant.

No. 84–5687.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 7, 1985.

Decided Nov. 19, 1985.

Nancy C. Garrison, Atty., Dept. of Justice, with whom Catherine G. O'Sullivan and Kevin R. Sullivan, Attys., Dept. of Justice, Washington, D.C., were on motion to dismiss for movant-appellee.

Robert E. Cooper, Los Angeles, Cal., of the Bar of the Supreme Court of California, pro hac vice by special leave of Court, with whom Phillip H. Rudolph and Robert B. McKenna, Washington, D.C., were on opposition to the motion to dismiss for appellant.

Before WRIGHT, MIKVA and BORK, Circuit Judges.

ON MOTION TO DISMISS

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

One of the newly-formed Bell Regional Holding Companies, US West, Inc., appeals from an opinion dated July 26, 1984 in *United States v. Western Electric Co.*, 592 F.Supp. 846 (D.D.C.) ("Opinion"). The district court issued the Opinion in response to motions to allow the Regional Companies to enter lines of business other than the provision of local telephone service. The

Opinion made general observations concerning the legal implications of the motions, set forth four conditions that such motions would have to satisfy, and referred the motions to the Department of Justice for its views.

Appellee, the Department of Justice, moves to dismiss the appeal. We grant the motion because we conclude that the district court's Opinion was neither a final decision nor an appealable interlocutory order.

## I.

In 1956, the American Telephone and Telegraph Company ("AT & T") and the Department of Justice ("DOJ") signed a consent decree limiting AT & T to the provision of common carrier communications services. *See United States v. American Telephone and Telegraph Co.*, 552 F.Supp. 131, 135–38 (D.D.C.1982), *aff'd mem. sub nom. Maryland v. United States*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983). In 1974, DOJ filed a separate action seeking further relief. *See* 552 F.Supp. at 139. In 1982, AT & T and DOJ agreed to a new consent decree (the "Decree") divesting AT & T of subsidiaries supplying local telephone service. *Id.* at 140–43.

The Decree provided for the formation of Regional Companies providing local telephone service.[1] *See* 552 F.Supp. at 226–27. Section II(D) of the Decree, as proposed jointly by AT & T and DOJ and modified by the district court, established "line of business restrictions" on the Regional Companies.

Pursuant to a waiver clause in the Decree, the district court gave permission to the Regional Companies to offer mobile radio services, *United States v. Western Electric Co.*, 578 F.Supp. 643 (D.D.C.1983), and time and weather information, *United States v. Western Electric Co.*, 578 F.Supp. 658 (D.D.C.1983). The mobile radio waiver was predicated upon adherence to three conditions for preserving equal access among competitors. *See* 578 F.Supp. at 651–52. The court ruled that the Regional Companies had carried their burden of showing that, with these conditions, there was no substantial possibility that they would use their monopoly power in local telephone service to impede competition in the mobile radio market. *See id.* at 649–50.

Between January and April 1984, the Regional Companies made nine more waiver requests. *See United States v. Western Electric Co.*, 592 F.Supp. 846, 850–51 n. 3 (D.D.C.1984). BellSouth Corp. asked for permission to bid on a NASA communications services and equipment contract.[2] US West, Inc. wanted general permission to provide real estate services and engage in real estate transactions and investments, and also permission to construct and operate a cellular radio system in the Gulf of Mexico.[3] *Id.* In response to these requests, the district court issued the Opinion that is the subject of this appeal. *United States v. Western Electric Co.*, 592 F.Supp. 846 (D.D.C.1984).

1. The Decree specified divestiture of 22 AT & T subsidiaries, the Bell Operating Companies ("Operating Companies" or "BOCs") that provided local telephone service. *See* 552 F.Supp. at 232 app. A. The BOCs were later consolidated into seven Regional Holding Companies ("Regional Companies"), of which the appellant is one. *See United States v. Western Electric Co.*, 569 F.Supp. 1057, 1062 n. 5 (D.D.C.), *aff'd mem. sub nom. California v. United States*, 464 U.S. 1013, 104 S.Ct. 542, 78 L.Ed.2d 719 (1983). The distinction between the BOCs and the Regional Companies is not germane to our decision. It will be assumed, for expository purposes only, that the Decree's restrictions on the BOCs apply to the Regional Companies.

2. BellSouth also sought to provide computer software and related services, *see* 592 F.Supp. at 850 n. 3, and, subsequently, office equipment. *See United States v. Western Electric Co.*, 604 F.Supp. 256, 259 n. 15 (D.D.C.1984).

3. The cellular radio application was formally submitted by New Vector Communications Inc., a wholly-owned subsidiary of US West. *See* 592 F.Supp. at 850 n. 3. US West later requested permission to engage in foreign business ventures. *See United States v. Western Electric Co.*, 604 F.Supp. 256, 259 n. 15 (D.D.C.1984).

The district court issued the Opinion because it agreed with DOJ "that general guidelines might be appropriate in order to achieve substantial uniformity in treatment, to aid the Regional Holding Companies in framing future requests, and to assist the Court in its decisions." These objectives would be served by "describ[ing] the standards and procedures the Court will follow in ruling on present and future motions for waivers." 592 F.Supp. at 851.

The district court divided waiver requests into two groups: permission to enter the long distance market, and all others. With regard to the first, in which it included BellSouth's NASA request, it ruled that

> [t]he Court will not even consider the substantive merits of a waiver request seeking permission to provide interexchange services until such time as the Regional Holding Companies lose their bottleneck monopolies and there is substantial competition in local telecommunications service. That is not now. The BellSouth motion for a waiver with respect to the NASA contract is therefore denied.

592 F.Supp. at 868 (footnotes omitted). With regard to the second category, which included the other eight requests then pending, the court conditioned its approval upon the adoption of four structural safeguards: (1) the establishment of separate subsidiaries;[4] (2) guarantees that the competitive enterprises would obtain their own debt financing on their own credit; (3) limitation of estimated net revenues of the proposed competitive enterprises to 10% of the Regional Companies' total estimated net revenues; and (4) submission to DOJ monitoring of the enterprises. 592 F.Supp. at 870–72. The district court then referred all pending requests to DOJ, "[i]n order to encourage informal negotiation and resolu-

tion, to avoid inundation of the Court with requests, and to make use of the expertise of the Department." *Id.* at 873. The waiver requests were to be returned to the court, accompanied by DOJ's recommendation, within thirty days. *Id.* at 874.

US West filed a notice of appeal from the Opinion. Neither BellSouth nor any of the other Regional Companies appealed. DOJ moved to dismiss the appeal on the ground that the Opinion was not an appealable order. US West filed a response, asserting that the Opinion was appealable either as a final decision under 28 U.S.C. § 1291 (1982) or as an interlocutory decision affecting an injunction under 28 U.S.C. § 1292(a)(1) (1982). BellSouth, appearing as amicus curiae, also argued against dismissal.

In the meantime, the Regional Companies seeking waivers amended all of their proposals to adopt explicitly the four conditions set forth in the Opinion. *See United States v. Western Electric Co.*, 604 F.Supp. 256, 260 (D.D.C.1984). DOJ returned the requests to the district court, recommending approval.[5] *Id.* The district court approved all the requests as amended, including the three submitted by US West.[6] *See id.* at 262–66.

## II.

Our jurisdiction is governed by 15 U.S.C. § 29(a) (1982):

> [I]n every civil action brought [under the antitrust laws] in which the United States is the complainant and equitable relief is sought, any appeal from a final judgment entered in any such action shall be taken to the court of appeals pursuant to sections 1291 and 2107 of title 28. Any appeal from an interlocutory order entered in any such action shall be taken to the court of appeals

---

**4.** The court acknowledged that it had stated in an earlier opinion that it was not eager to require separate subsidiaries, but it found that this measure was warranted in the present situation. *See* 592 F.Supp. at 871.

**5.** Two requests that DOJ indicated it would not recommend were withdrawn by the Regional

Companies. *See United States v. Western Electric Co.*, 604 F.Supp. 256, 259 n. 14 (D.D.C.1984).

**6.** After this subsequent district court decision was issued, a motions panel of this court heard oral argument on DOJ's motion to dismiss the appeal.

pursuant to sections 1292(a)(1) and 2107 of title 28 but not otherwise.

Thus the district court's Opinion is appealable only if it is a "final decision[ ]" under 28 U.S.C. § 1291 (1982), or an "[i]nterlocutory order[ ] ... granting, continuing, modifying, refusing or dissolving [an] injunction[ ]" under 28 U.S.C. § 1292(a)(1) (1982).[7] US West claims that the Opinion is one or the other; DOJ claims that it is neither.

### A.

■ We do not think the district court's Opinion can be properly characterized as a final decision. The Opinion clearly is not final in any literal sense. "A final decision is one which disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness, for giving effect to the judgment and leaves nothing to be done in the cause save to superintend, ministerially, the execution of the decree." *City of Louisa v. Levi*, 140 F.2d 512, 514 (6th Cir.1944) (citations omitted). *Accord Southern Ry. v. Postal Telegraph-Cable Co.*, 179 U.S. 641, 643, 21 S.Ct. 249, 250, 45 L.Ed. 355 (1901) ("The case is not to be sent up in fragments...."); *Rector v. United States*, 20 F.2d 845, 872 (8th Cir.1927). In this case, the district court's Opinion neither granted nor denied US West's requests for waivers of the line of business restrictions of the Decree; it merely established standards and procedures for the consideration of those requests. US West, in effect, has nothing to appeal. Nor does the district court's denial of BellSouth's waiver request provide US West with grounds to raise concerns regarding its own waiver requests. The district court indicated that the guidelines it set forth were intended to

aid the Regional Companies in framing future requests. *See* 592 F.Supp. at 870 n. 101. With regard to US West's pending requests, the effect of the court's Opinion was to reserve judgment until the views of DOJ and others could be heard pursuant to the procedures established by the Opinion. Although the court enumerated conditions for approval, it did not commit itself to approving the requests if US West accepted those conditions, or rejecting them if it did not. As stated by the district court, "[t]he Regional Holding Companies are free, of course, to submit their requests in whatever form they wish." *Id.* In short, the Opinion cannot be characterized as "final" with regard to the requests of US West because the district court contemplated further proceedings before ruling on the requests. Those proceedings have now occurred, and a subsequent final decision has been issued.[8]

US West, however, draws upon a line of cases espousing an approach known as "pragmatic finality," *see generally*, 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3913 (1976); 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 110.12 (2d ed. 1983), and argues that in this case the term "final decision" should be given a construction distinct from its ordinary meaning. Under the pragmatic approach, the finality requirement is to be given a "practical rather than a technical construction." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949) (collateral order doctrine). The courts are advised to consider "the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." *Dickinson v. Petroleum Conversion Corp.*, 338 U.S.

---

**7.** Section 2107 of Title 28, referred to in 15 U.S.C. § 29(a) (1982), quoted in the text, concerns the time for appeal.

**8.** *See United States v. Western Electric Co.*, 604 F.Supp. 256 (D.D.C.1984). The district court had asked the parties for their views on whether it retained jurisdiction of the waiver requests, notwithstanding the present appeal.

All of the parties agreed that the Court could properly retain jurisdiction to decide the requests despite the pendency of an appeal, either because the US West appeal is premature and subject to dismissal or because the Court has equitable authority to administer the decree notwithstanding the appeal. The Court has concluded that it has jurisdiction to decide these requests....
*Id.* at 260 n. 16.

507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950) (footnote omitted).

We do not decide whether to embrace or reject pragmatic finality, because, even under that approach, we would still dismiss this appeal. The price of piecemeal review here is substantial. The district court's disposition of a waiver request is subject to appeal as a final decision. The present appeal and subsequent appeals would raise the same issues regarding the authority of the district court to impose public policy considerations, conditions, and procedures on the disposition of waiver requests, fostering unnecessary duplication.[9] The present attempted appeal presents these issues in a setting "devoid of factual context." *W.E.B. Dubois Clubs of America v. Clark*, 389 U.S. 309, 312, 88 S.Ct. 450, 452, 19 L.Ed.2d 546 (1967). By contrast, an appeal from the grant or denial of a waiver would come with a factual record.

US West contends, however, that dismissing this appeal will deny it justice, since it will be forced, at least temporarily, to accommodate the district court in planning its entry into new businesses. We are not persuaded of this. The district court stated that the Regional Companies were free to submit their waiver requests in whatever form they wished. US West, for instance, could have submitted requests that conformed to the district court's conditions and also nonconforming requests for the same projects.[10] It chose not to. We perceive no apparent danger of any denial of justice. In our view, a pragmatic approach counsels dismissal of this appeal.

In urging the principle of pragmatic finality, US West relies upon a number of cases that come from lines of authority unrelated to the present case. *See, e.g., Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (the collateral order doctrine applies when the issue is separable from and independent of the rights asserted in the action, and it is too important to be denied review); *Gillespie v. United States Corp.*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964) (stating that an appeal of marginal finality can be taken if fundamental to the further conduct of the case); *Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966 (2d Cir.1975), *cert. denied*, 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976) (holding that an order to arbitrate has a final and irreparable effect on the rights of parties and is appealable). It is apparent that the factors supporting appealability in those cases are not present here. US West does, however, cite two examples of pragmatic finality that merit further discussion.

In *Brown Shoe Co. v. United States*, 370 U.S. 294, 306, 82 S.Ct. 1502, 1513, 8 L.Ed.2d 510 (1962), the Supreme Court held final and reviewable a district court order holding that a merger should be undone but postponing dissolution until after the parties had submitted plans for implementation. (The district court had, in effect, passed judgment on the merits of the case before it.) The Court employed a pragmatic approach to the question of finality. *Id.*

9. *See* Response at 17–21. The Supreme Court has also stressed the limits of pragmatism:

Finality as a condition of review ... has been departed from only when observance of it would practically defeat the right to any review at all.... To be effective, judicial administration must not be leaden-footed. Its momentum would be arrested by permitting separate reviews of the component elements in a unified cause.

*Cobbledick v. United States*, 309 U.S. 323, 324–25, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940). *Accord* 9 J. Moore, B. Ward & J. Lucas, *supra* p. 8, ¶ 110.07, at 109–10; 15 C. Wright, A. Miller & E. Cooper, *supra* p. 8, § 3913, at 523–24.

10. US West expressed the concern that it might be held in contempt of court if it submitted nonconforming waiver requests. *See* Response at 26 n. 7. We think this purported concern little better than disingenuous, since the district court explicitly stated that the Regional Companies were free to submit such requests. *See* 592 F.Supp. at 870 n. 101. The parties disagreed on whether US West was free to appeal from a grant of a waiver request with conditions on the grounds that it was aggrieved by the inclusion of the conditions. *Compare* Motion of the United States to Dismiss Appeal for Lack of Jurisdiction at 14 n. 11 *with* Response at 32–33. It is unnecessary for the court to reach that question in the present appeal.

at 306, 82 S.Ct. at 1513. It then made three observations. First, it suggested that the dissolution order had sufficient indicia of finality to make it reviewable, because every prayer for relief was passed upon, and in particular the propriety of divestiture was resolved. *Id.* at·308–09, 82 S.Ct. at 1514–15. The Opinion in this case, by contrast, passed upon no prayer for relief and resolved no substantive issue. Second, the Court noted that a divestiture decree would unfold in a changing marketplace. "The unsettling influence of uncertainty as to the affirmance of the initial, underlying decision compelling divestiture would only make still more difficult the task of assuring expeditious enforcement of the antitrust laws." *Id.* at 309, 82 S.Ct. at 1515. Although this observation may somewhat support US West's protests that the district court's Opinion affects its future diversification decisions, we find this fact alone insufficient. Finally, the *Brown Shoe* Court noted that a settled course of reviewing decrees contemplating future divestiture had developed, and although the question of finality had not been faced before, this body of precedent supported hearing the appeal. *Id.* at 306–08, 309–11, 82 S.Ct. at 1515–16. This is not true in this case. The Opinion here is one-of-a-kind; no settled course of reviewing such statements of guidelines is discernible. *Brown Shoe* does not require us to conclude that the district court's Opinion is appealable as a final decision.

In *Morales v. Turman*, 535 F.2d 864 (5th Cir.1976), *rev'd on grounds other than finality*, 430 U.S. 322, 97 S.Ct. 1189, 51 L.Ed.2d 368 (1977), the Fifth Circuit held final a district court order, predicated on the view that there is a right in juvenile correctional facilities to treatment, enumerating minimum standards to be included in a comprehensive plan to be drawn up by the parties. 535 F.2d at 867 n. 6. "[T]he District Court made it perfectly clear that any plan submitted must be consistent with the minimum requirements laid out in its opinion.... [T]he underlying determination of the minimum standards supposedly required by the right to treatment [is] appealable." *Id. Morales* presents, at most, a distant analogy to the case at hand. It takes an order that purports to be nonfinal and holds it final because it appears that the district court has made up its mind. *Morales* is not controlling in this case. Far from deciding that it would not hear waiver requests that did not contain the four safeguards, the district court's opinion expressly stated that the applicants are free to submit waiver requests in any form they choose.[11]

The precedent US West cites would not change our conclusion even were we to adopt the pragmatic approach of balancing directly the cost of piecemeal review against the danger of denying justice. The doctrine of pragmatic finality does not support the appealability of the Opinion in this case. Thus, whether one views finality formally or pragmatically, the Opinion is not a final decision under 28 U.S.C. § 1291 (1982).

**B.**

 Alternatively, US West contends that the Opinion is appealable as an interlocutory order granting, continuing, modifying, refusing or dissolving an injunction, or refusing to dissolve or modify an injunction, *see* 28 U.S.C. § 1292(a)(1) (1982), since the Opinion either continued, modified, refused to dissolve, or refused to modify the Decree, which is an injunction.[12] DOJ contends that the Opinion at most clarified the Decree, or that it had no legal effect at all.

---

11. In connection with pragmatic finality, US West also cites several decisions concerning the doctrine of ripeness. *See* Response at 27–30. Were we to conclude that this appeal is ripe in the prudential sense, that would not satisfy the jurisdictional requisite of finality. The well-defined rules concerning when a civil appeal may be had virtually eliminate the need to consider whether it is prudent to hear such an appeal when appealed.

12. Injunctions are "orders that are directed to a party, enforceable by contempt, and designed to accord or protect, 'some or all of the substantive relief sought by a complaint' in more than preliminary fashion." 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure* §·3922, at 29 (1977) (*quoting International Products Corp. v. Koons*, 325 F.2d 403, 406 (2d Cir.1963)). An antitrust consent decree is an injunction for present purposes. *Cf. United*

If the district court had decided in the Opinion to allow, or refuse to allow, a course of conduct under the consent decree, as it did in its subsequent order, then the Opinion would be reviewable. *See Sperry Corp. v. City of Minneapolis,* 680 F.2d 1234, 1236–37 (8th Cir.1982). Instead, the Opinion established procedures and conditions for waiver requests, deterred the submission of requests to provide long distance service, and noted that the court would consider the impact of each request on the quality of local service and the attainment of equal access among competitors in the long distance market. The district court ruled on none of US West's requests.

Considering the specific action taken by the district court, we conclude that the Opinion did not "continue" the injunction embodied in the Decree. Continuation in this context means a refusal to modify an injunction even though circumstances have changed since its entry. A waiver request made pursuant to the terms of the injunction itself does not constitute a request for a modification of the injunction. It rests on the terms of the injunction, not on changed circumstances. Similarly, the Opinion did not "refuse to modify" or "refuse to dissolve" the Decree, since the relief sought by the Regional Companies was contemplated by the Decree. On the other hand, we cannot agree that the Opinion had no legal effect on the Decree at all, since the Opinion established a procedure referring requests to DOJ that was not foreshadowed by the Decree, and articulated substantive conditions and standards without deciding US West's waiver requests. This action can be characterized either as a modification of the Decree, which is explicit

grounds for appealability under section 1292(a)(1), or clarification of the Decree, which is not among enumerated grounds for appealability.[13]

Appealability does not turn, however, on the distinction between modification and clarification. Indeed, "clarification and modification may be virtually indistinguishable." *New York Telephone Co. v. Communications Workers of America,* 445 F.2d 39, 46 (2d Cir.1971). Rather, appealability "depends not on terminology but on the substantive effect of the order." *Roberts v. St. Regis Paper Co.,* 653 F.2d 166, 169 (5th Cir.1981). "Unless a litigant can show that an interlocutory order of the district court might have a 'serious, perhaps irreparable, consequence,' and that the order can be 'effectually challenged' only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal."[14] *Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 997, 67 L.Ed.2d 59 (1981). *Accord Switzerland Cheese Association v. E. Horne's Market,* 385 U.S. 23, 24, 87 S.Ct. 193, 194, 17 L.Ed.2d 23 (1966).

We must determine whether the Opinion might have a serious, perhaps irreparable consequence, and whether it can be effectively challenged only by immediate appeal. On these issues, US West makes the following points:

> Unless US West's appeal is heard now, its planning and implementation of subsequent new business ventures will be hamstrung by the District Court's conditions. Alternatively, if US West brings a new business venture for the District Court's approval that does not comply with the new "conditions," US West will suffer the inescapable delay—and loss of

---

*States v. Cities Service Co.,* 410 F.2d 662, 663 & n. 1 (1st Cir.1969).

**13.** The district court rejected the proposition that its Opinion added to the Decree and distinguished "between the imposition of new provisions and an interpretation of the decree in light of its governing purposes. The guidelines enumerated herein simply implement the Court's responsibility to pass upon waiver applications as required by the decree." 592 F.Supp. at 870 (footnote omitted).

**14.** In one pertinent application of this formula, a ruling rejecting a construction of a consent decree that would cause it to lapse was held appealable not because it "continued" the injunctive decree or "refused to dissolve" it, but because this construction had serious, perhaps irreparable consequences not otherwise effectually challenged. *See Roberts v. St. Regis Paper Co.,* 653 F.2d 166, 170 (5th Cir.1981).

business opportunities and profits—of litigating the issue below and then bringing a new appeal to this Court.

Response at 38. DOJ answers that

> even if US West ... decides to structure its future plans to include the conditions specified in the Opinion, in order to avoid the likelihood of adverse rulings by the court, it would not be entitled to review of hypothetical orders that the district court never entered.
>
> ... The delay that results from awaiting a final decision of a district court before going to the court of appeals is an inherent feature of our judicial system.

Reply at 12–13 (footnote & citations omitted).

The first part of the *Carson* test—the requirement of a serious, perhaps irreparable, consequence—resembles the second element of the test set forth in *Virginia Petroleum Jobbers Association v. FPC*, 259 F.2d 921, 925 (D.C.Cir.1958) (per curiam), for the granting of a stay—irreparable injury. It is clear that the potential consequences outlined by US West would not qualify as irreparable injury in the context of a stay application. *Cf. Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 675 (D.C. Cir.1985). US West does not allege that its destruction is imminent. It has not shown that the alleged harm is *certain* to occur in the near future and will directly result from the injunctive order. *See id.* The cost and delay associated with litigation does not serve to establish irreparable harm to US West. *See McSurely v. McClellan*, 697 F.2d 309, 317 n. 13 (D.C. Cir.1982). While the *Carson* standard may be somewhat less exacting than its *Virginia Petroleum* counterpart, we conclude that US West has failed to make the requisite showing under either.

DOJ cites two decisions that reinforce our conclusion. In *Switzerland Cheese*, the Supreme Court held that "[o]rders that in no way touch on the merits of the claim but only relate to pretrial procedures are not ... 'interlocutory' within the meaning of § 1292(a)(1). We see no other way to protect the integrity of the congressional policy against piecemeal appeals." 385

U.S. at 25 (footnote omitted). The procedures established by the Opinion are analogous to pretrial procedures and our review of them would increase the likelihood of piecemeal appeals. In *Massachusetts Association for Retarded Citizens v. King*, 643 F.2d 899 (1st Cir.1981), the other case DOJ cites, the court refused to review the oral statements of the district court:

> [T]he district court talked about the obligations of the parties and the process through which they could seek relief.... Nothing that the court said compelled the parties to change their behavior. Moreover, they were not prevented from doing so. This is not a case in which the court denied a motion for which a party appeals.

*Id.* at 904. In the present case, the Opinion did not compel US West to modify its waiver requests pursuant to the Decree.

Two cases relied on by US West, which allow appeals of injunctive orders, are distinguishable. In *Roberts v. St. Regis Paper Co.*, 653 F.2d 166 (D.C.Cir.1981), the appellants appealed the district court's rejection of a request to dissolve an injunction. The court of appeals permitted the appeal, finding serious, perhaps irreparable, consequences in the impact of the decree on job assignments *then in effect*. *See id.* at 170. In *Gary W. v. Louisiana*, 601 F.2d 240 (5th Cir.1979), the court held that appointment of a master to monitor implementation of an injunctive order was appealable because it modified the original relief provided. Here, by contrast, the Opinion's referral of waiver requests to DOJ is consistent with the Decree, since DOJ would have had the opportunity to comment in any event.

We conclude that US West has failed to establish that the Opinion might have a serious, perhaps irreparable consequence. We further hold that the Opinion is nonappealable under the second requirement of the *Carson* test—that an injunctive order is appealable immediately only it if can be effectively challenged in no other way. The parties do not address this issue. The Opinion, as already noted, does not prevent US West from requesting a waiver on terms contrary to those the court set out.

Should the waiver request be rejected for noncompliance, the conditions laid down in the Opinion could be effectively challenged on appeal. The Opinion by itself is not, therefore, an appealable interlocutory order.

The July 26, 1984 Opinion of the district court was neither a final decision nor an appealable interlocutory order. We therefore dismiss US West's appeal.

*It is so ordered.*