UNITED STATES of America, Plaintiff,

v.

WESTERN ELECTRIC COMPANY, INC., and American Telephone and Telegraph Company, Defendants.

UNITED STATES of America, Plaintiff,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY, et al., Defendants.

Civ. A. No. 82–0192.
Misc. No. 82–0025 (PI).

United States District Court, District of Columbia.

Dec. 7, 1983.

James P. Denvir, Michael F. Altschul, Luin P. Fitch, J. Philip Sauntry, Jr., Richard Levine, U.S. Dept. of Justice, Antitrust Div., Washington, D.C., for plaintiff.

Howard J. Trienens, Jim G. Kilpatric, John D. Zeglis, Francine Berry, New York City, for defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

On November 8, 1983, the Court requested AT & T, the Regional Operating Companies, and the Department of Justice to apprise it of the plans of the various entities regarding the provision of time and weather information to the public and as to the legal status of such plans.

It appears from the responses that have been received that current policies and practices concerning the provision of time and weather services differ widely. Depending on the region, some Operating Companies presently provide time and weather information free of charge and expect to continue to do so if permitted under the decree;[1] others do not now furnish these services themselves but rely on commercial sponsors to do so (see *infra*); still others provide time and weather services but may cease doing so,[2] especially

---

1. According to Bell Atlantic, any charge for time and weather service is a tariff matter to be determined by the appropriate regulatory commission. Pacific Northwest Bell Co. also states that FCC action would be required before an

Operating Company could impose a charge for directly provided services.

2. *E.g.,* Bell South, Pacific Northwest Bell.

if they are able to find a commercial sponsor willing to assume this task.[3]

The Court is without authority under the decree to require any Operating Company to provide time and weather information. That is and always has been a decision for the companies themselves, subject to whatever direction federal or state regulators may give to them. The Court is involved only because there is a difference of views as to whether the decree precludes the Operating Companies from continuing to provide these services following the Bell System reorganization.

## I

Section II(D)(1) of the decree prohibits the Operating Companies from providing information services.[4] These services are defined as "the offering of a capability for ... making available information which may be conveyed via telecommunications." Section IV(J) of the decree; see also, *United States v. AT & T*, 552 F.Supp. 131, 229 (D.D.C.1982). Because time and weather announcements fall within this definition, the Operating Companies are prohibited from providing such services[5] absent a waiver from the Court.[6]

The Department of Justice supports the grant of a waiver where time and weather information is offered as a public service, but it opposes a waiver to the extent that the information may be offered on a "commercial basis."[7] The Department argues that if the services can be offered commercially there is no public benefit in permitting the Operating Companies to provide them because other vendors would have an incentive to do so. Moreover, according to the Department, where there is a commercial interest, the Operating Companies would have the incentive and the ability to discriminate against competing time and weather service providers in regard to access arrangements as well as the incentive

3. *E.g.*, NYNEX and Ameritech. Northwestern Bell states that it will continue to offer time and weather service to the extent it is able to recover appropriate costs or exercise flexibility in pricing. Mountain Bell has petitioned the Court for an order which would permit it to provide time and weather on a commercial basis, without constraints as to price, or entry and exit from the market.

4. This prohibition is necessary because the Operating Companies would have both the incentive and the ability to discriminate against competing information providers either by granting more favorable access to the local network to their own information services or by subsidizing their services with revenues from the local exchange monopoly. Moreover, the prohibition against providing information services gives Operating Companies an incentive to design their local networks to accommodate the maximum number of information service providers. 552 F.Supp. at 189–90.

5. AT & T may provide time and weather services without restriction. See *United States v. AT & T, supra,* 552 F.Supp. at 185–86 n. 223. However, that company has informed the Court that it will not furnish such services on its own but will continue to offer its "900" service which permits callers, for a fee of 50 cents for the first minute and 35 cents for each additional minute, to reach the time recording of the United States Naval Observatory.

6. Relying on the Court's ruling of August 11, 1982 that, notwithstanding the general prohibi-

tion on electronic publishing, AT & T may offer time and weather services, *United States v. AT & T, supra,* 552 F.Supp. at 185 n. 223, Pacific Telesis and Ameritech argue that their ability to continue to provide time and weather announcements may be inferred from the decree and that a waiver is therefore not required. However, the Court's ruling to which these Regional Operating Companies refer was addressed to restrictions on AT & T following divestiture, as distinguished from limitations on the Operating Companies (compare Parts VI and VII of the August 11, 1982 Opinion). The Court accordingly rejects the Telesis and Ameritech position.

Bell Atlantic goes even further and asserts that the Operating Companies may provide various other kinds of information services. The Court need not, and does not, address this interpretation of the decree's line of business restrictions at this time.

7. The Department does not state in specific terms what it regards as a "commercial basis" except to indicate that, in its opinion, time and weather services are offered as a public service—presumably the opposite of a commercial basis—"where there are no commercial messages and where this is no basis, given local tariffs, for revenue splitting between the BOC and a separate provider of time and weather services." Memorandum of November 16, 1983 at 2.

and ability to engage in cross subsidization. In short, the Department once again reiterates the arguments it has consistently made with regard to non-monopoly activities of the Operating Companies, *e.g.*, the Yellow Pages and the marketing of customer premises equipment. See *United States v. AT & T, supra*, 552 F.Supp. at 191–94.

■ To the extent that the Department equates the provision of these services on a "commercial basis" with the imposition of a charge, its objection is without merit. Vendors who are candidates for the provision of this service will be no less likely to offer it if the Operating Company provides it for a fee than if that company furnishes it free of charge. If anything, where the Operating Company charges a fee, a potential competitor may assume the presence of a profitable market and be encouraged to enter the field. In short, the provision of these services by an Operating Company, even for a fee, has no anticompetitive potential, and accordingly the Court's waiver extends to such situations.

The Department's objection to the continued provision of time and weather services by the Operating Companies once alternative providers are present presents more difficult problems on which the Court will, at this time, reserve judgment. First, none of the Regional Operating Companies has indicated in its replies to the Court that it intends to provide time and weather announcements on its own in competition with a commercial sponsor should it be able to find one. Second, the resolution of this matter may depend on a number of factors which are presently unknown and unknowable,[8] and the issue is therefore not ripe for adjudication. See generally, Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3532. If and when

this situation arises, there will be time enough to tackle the question whether an Operating Company wishing to provide time and weather services competitively has shown that "there is no substantial possibility that it could use its monopoly power to impede competition in the [relevant] market ...." Decree, section VIII(C).

For these reasons, the Court hereby grants a waiver with respect to time and weather announcements pursuant to sections VII and VIII(C) of the decree, and it expressly rules that an Operating Company may provide such announcements to its customers notwithstanding section II(D) of the decree. The provision of this service is obviously in the public interest, and, at least where no alternative provider of this service is present (see *supra*), the furnishing of these services by the Operating Companies should be encouraged rather than prohibited.

In view of the waiver, if any telephone company ceases to provide time and weather services, that would be its own business decision,[9] and the decree would simply be an excuse for an action which the company decided to take for its own commercial reasons.[10]

## II

The collateral question raised by the Regional Operating Companies remain to be considered.

■ First. Several Operating Companies have made arrangements with unaffiliated sponsors to provide time and weather services, and they request the Court's ruling regarding the legality of such arrangements under the decree. In such a situation, a local business typically purchases or

---

8. *E.g.,* whether the entities which would provide the services were purely commercial enterprises or engaged in quasi-public, charitable, or other fund-raising endeavors; whether their businesses had any relationship to telecommunications; and whether they charged fees to the public or merely used the services as vehicles for commercial announcements.

9. It may be that, to become effective, some of these decisions would need to be sanctioned by state and federal regulatory bodies.

10. In that respect the use made of the decree would be similar to its use by some local companies as a justification for substantial rate increases.

leases announcement equipment, prepares a message, and pays the Operating Company for exchange access, and the person who calls the appropriate number hears an advertising message as well as the time and the weather. In the view of the Court, under these circumstances, the Operating Company does not "provide information services" within the meaning of section II(D) of the decree; it merely transmits a call under the tariff. Accordingly, no waiver is required.[11]

■ Second. Some of the Operating Companies offering time and weather services use facilities which cross LATA boundaries.[12] If these companies were required to reconfigure their networks to avoid all inter-LATA transmission, their costs would rise substantially,[13] and they therefore seek clarification that these services represent "official services" within the meaning of the decree and for that reason do not fall within the prohibition on interexchange services.[14] The Department of Justice does not object to this request, and the Court sees no reason, given the purposes of the decree, why it should not be granted. However, the time and weather services do not properly fall within the four basic categories of "official services" set out in the decree,[15] and to classify them as such would set an undesirable precedent. Accordingly, the Court hereby grants a modification of the decree, pursuant to sections VII and VIII(C), to allow continuation of these services on the present, limited inter-LATA basis.

11. Ameritech states that most of its operating companies have transferred or intend to transfer their time and weather services to unaffiliated sponsors in order to comply with the FCC regulations governing structural separation. According to Ameritech, the FCC decision in *Computer II*, requires operating companies to provide "enhanced" services, including time and weather, only through separate corporate subsidiaries using physically separate facilities. See Memorandum Opinion and Order in Amendment of Section 64.702 of the Commission's Rules and Regulations (Second Computer Inquiry), 84 F.C.C.2d 50, 56 n. 6 (Docket No. 20828, 1980); *on reconsideration* from 77 F.C. C.2d 384 (1980); *further reconsideration*, 88 F.C. C.2d 512 (1981), *aff'd sub nom., Computer and Communications Industry Ass'n v. FCC*, 693 F.2d 198 (D.C.Cir.1982). This separation requirement became effective on January 1, 1983, but the FCC postponed enforcement with respect to time and weather services on the condition that the Operating Companies seek private sponsors to take over these services. See Ameritech Memorandum at p. 2 & n. ***.

Pacific Telesis, on the other hand, states that "[t]he FCC has indicated it will not regulate time and weather services." Brief at 3 n. * (citing Amendment of Section 64.702, etc. (Second Computer Inquiry), 84 F.C.C.2d at 56 n. 6 (1980)). The Court takes no position on the issue of the FCC regulation or its effect on the Operating Companies' ability to continue providing time and weather services to their customers.

12. *E.g.,* Pacific Telesis and Bell Atlantic.

13. Pacific Telesis estimates that its annual costs of providing time and weather service, would increase $2 to $2½ million if it were required to reconfigure its network. See Memorandum of November 16, 1983, at 6 n. *.

14. See generally, *United States v. Western Electric Company*, 569 F.Supp. 1057, 1097–1101 (D.D.C.1983).

15. Official Services "represent communications between personnel or equipment of an Operating Company located in various areas and communications between Operating Companies and their customers." *United States v. Western Electric, supra,* 569 F.Supp. at 1097. The four basic categories of Official Service systems are: (1) the Operational Support System Network which permits the monitoring and controlling of trunks and switches and the routing of traffic from a centralized location; (2) the Informational Processing Network which is used to transmit data relating to customers' trouble reports, service orders, trunk orders from interexchange carriers, and other information necessary for carrying out the Operating Companies' business; (3) the Service Circuits which are used to receive repair calls and directory assistance calls from Operating Company customers; and (4) Voice Communications which are used by the Operating Companies for calls relating to their internal business.