894 F.2d 430
 282 U.S.App.D.C. 271, 1990-1 Trade Cases 68,892
 UNITED STATES of America
v.
WESTERN ELECTRIC COMPANY, et al.
Appeal of PACIFIC TELESIS GROUP.
UNITED STATES of America
v.
WESTERN ELECTRIC COMPANY, INC., et al.
Appeal of BELLSOUTH CORPORATION.
 Nos. 86-5641, 86-5642.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 24, 1989.
Decided Jan. 16, 1990.
 
 Appeals from the United States District Court for the District of Columbia (Civil Action No. 82-00192).
 Robert M. Westberg, with whom Richard W. Odgers, Margaret deB. Brown, San Francisco, Cal., and Stanley J. Moore were on the brief, for appellant Pacific Telesis Group in No. 86-5641. Robert V.R. Dalenberg and Paul H. White, San Francisco, Cal., also entered appearances for Pacific Telesis Group.
 Abbott B. Lipsky, Jr., Washington, D.C., with whom R. Frost Branon, Jr. and Veronica G. Kayne, Atlanta, Ga., were on the brief, for appellant BellSouth Corp. in No. 86-5642.
 Andrea Limmer, Atty., Dept. of Justice, with whom Catherine G. O'Sullivan, B. Barry Grossman and Nancy C. Garrison, Attys., Dept. of Justice, Washington, D.C., were on the brief, for appellee U.S. in Nos. 86-5641 and 86-5642. George Edelstein, Washington, D.C., also entered an appearance for U.S.
 David W. Carpenter, with whom Francine J. Berry, Mark C. Rosenblum and Howard J. Trienens, Chicago, Ill., were on the brief, for appellee AT & T in Nos. 86-5641 and 86-5642. Robert D. McLean, Chicago, Ill., also entered an appearance for AT & T.
 Thomas S. Martin, Washington, D.C., with whom Chester T. Kamin, Chicago, Ill., Michael H. Salsbury, Anthony C. Epstein and John T. Nakahata, Washington, D.C., were on the brief, for appellee MCI Communications Corp. in Nos. 86-5641 and 86-5642.
 Raymond F. Burke, Baltimore, Md., with whom Gerald E. Murray, New York City, and John P. Walsh were on the brief, for intervenor NYNEX Corp. Thomas J. Hearity, Washington, D.C., also entered an appearance for NYNEX.
 Before MIKVA, HARRY T. EDWARDS, and WILLIAMS, Circuit Judges.
 Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.
 HARRY T. EDWARDS, Circuit Judge:
 
 
 1
 Pacific Telesis Group ("Pacific Telesis") and BellSouth Corporation ("BellSouth"), appellants in this consolidated appeal, challenge a District Court ruling based on the consent decree ("Decree") that settled the Government antitrust suit against the American Telephone and Telegraph Company ("AT & T"). See United States v. American Tel. & Tel. Co., 552 F.Supp. 131, 226-34 (D.D.C.1982), aff'd sub nom. Maryland v. United States, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983). Under the terms of the District Court's ruling, the Bell Operating Companies and Regional Holding Companies (collectively "BOCs") must seek Department of Justice ("DOJ") authorization before they can acquire "conditional interests" in companies engaged in lines of business foreclosed to the BOCs. See United States v. Western Elec. Co., Civ. Action No. 82-0192, 1986 WL 11238 (D.D.C. Aug. 7, 1986), reprinted in Joint Appendix ("J.A.") 293. Because this requirement enlarges the BOCs' obligations under the Decree and was imposed without adequate notice or opportunity to be heard, we find that the District Court's ruling cannot be justified as either an interpretation or a modification of the Decree. Therefore, we reverse.
 
 I. BACKGROUND
 
 2
 This case centers on the restrictions that the Decree imposes on the BOCs' entry into various service and product markets. Section II(D) of the Decree provides thatno BOC shall, directly or through any affiliated enterprise:
 
 
 3
 1. provide interexchange telecommunications services or information services; [or]
 
 
 4
 2. manufacture or provide telecommunications products or customer premises equipment....
 
 
 5
 American Tel. & Tel., 552 F.Supp. at 227 (emphasis added).[1] Under section VIII(C), the court may waive these line-of-business restrictions "upon a showing by the petitioning BOC that there is no substantial possibility that it could use its monopoly power to impede competition in the market it seeks to enter." 552 F.Supp. at 231.[2] Together, these provisions are designed to prevent BOCs from using their respective local-service monopolies to obstruct competition in related markets. See generally 552 F.Supp. at 186-95.
 
 
 6
 The question before the District Court was whether sections II(D) and VIII(C) govern a BOC's proposal to acquire a "conditional interest" in a firm engaged in a restricted line of business.[3] Sometime in 1986, intervenor NYNEX Corporation ("NYNEX"), a BOC, sought the opinion of the DOJ on whether a court-issued waiver would be necessary before NYNEX could acquire an option to buy 100% of the stock of Tel-Optik, Ltd., ("Tel-Optik") a company engaged in the development of a transatlantic telecommunications cable system.[4] In its report to the District Court, the DOJ considered the Tel-Optik cable system to constitute a prohibited "interexchange telecommunications service" under section II(D)(1). See J.A. 63. But because ownership of a mere option to buy Tel-Optik would not, in the DOJ's view, make Tel-Optik an "affiliated enterprise" of NYNEX, the Department concluded that a waiver would not be required unless and until NYNEX sought to exercise its purchase rights. See id. 68-73. MCI Communications Corporation ("MCI") subsequently filed a "protest" to the DOJ's report. In an order issued on June 26, 1986, the District Court indicated that it would treat MCI's submission as a "motion for clarification" and ordered the parties to brief "the question of the status of a conditional interest under the decree." United States v. Western Elec. Co., Civ. Action No. 82-0192, slip op. at 2, 1986 WL 971 (D.D.C. June 26, 1986), reprinted in J.A. 115 ("June 26 order").
 
 
 7
 In its memorandum opinion, the District Court framed the issue as "what, in this context, constitutes an 'affiliated enterprise,' " a term that the Decree does not expressly define. United States v. Western Elec. Co., Civ. Action No. 82-0192, slip op. at 3 (D.D.C. Aug. 7, 1986), reprinted in J.A. 295. Looking to the purpose of the Decree for guidance, the trial court reasoned that "it would be wholly unreasonable to hold that the decree does not require a waiver proceeding pursuant to section VIII(C) in a situation where acquisition of a conditional interest provides a [BOC] with a substantial incentive and ability unfairly to impede competition...." Id. at 3-4, reprinted in J.A. 295-96. However, the District Court also expressed its agree ment with the BOCs "that not every expenditure made in pursuit of an acquisition target requires a waiver." Id. at 4, reprinted in J.A. 296.
 
 
 8
 Without directly answering the question with which it had begun its analysis, the District Court propounded a screening procedure for determining which conditional-interest transactions would be permitted under the Decree. The trial court ruled that, "prior to acquiring a conditional interest in a prohibited line of business, a [BOC] shall secure the approval of the Department of Justice," which is to exercise its judgment in light of "the goals and purposes of the decree." Id. at 5, reprinted in J.A. 297.[5] The District Court further indicated that, in the event that the DOJ approves a transaction, no further "approval [by] the Court [will] be required" until "the actual acquisition ... of an equity interest," at which point the BOC can apply for a court-issued waiver. Id. at 6, reprinted in J.A. 298. The trial court then proceeded on its own to determine that no waiver was necessary for the conditional-interest transaction proposed by NYNEX. See id. at 6-8, reprinted in J.A. 298-300.[6]
 
 
 9
 BOCs Pacific Telesis and BellSouth filed timely appeals challenging the DOJ-approval requirement. Although formally an appellee, the United States, through the DOJ, continues to maintain that a BOC's ownership of a conditional interest does not make the target company an "affiliated enterprise" under section II(D) of the Decree, and therefore urges reversal. Appellees MCI and AT & T defend the ruling of the District Court.
 
 II. ANALYSIS
 
 10
 A. Principles of Law Governing Decree Administration
 
 
 11
 There are normally two modes of decree administration available to a district court. The first is interpretation of a decree. Construction of a consent decree is governed by ordinary principles of contract law. See United States v. ITT Continental Baking Co., 420 U.S. 223, 236-37, 95 S.Ct. 926, 934-35, 43 L.Ed.2d 148 (1975); United States v. Western Elec. Co., 846 F.2d 1422, 1427 (D.C.Cir.) ("Western Elec. III "), cert. denied --- U.S. ----, 109 S.Ct. 306, 102 L.Ed.2d 325 (1988). Consequently, the meaning of a decree's terms "must be discerned within its four corners." United States v. Armour & Co., 402 U.S. 673, 682, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971). To achieve this end, the court may look to conventional "aids to construction," including "the circumstances surrounding the formation of the consent order, any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree." ITT Continental Baking Co., 420 U.S. at 238, 95 S.Ct. at 935. In short, "our interpretation of [a decree] must ... be grounded in the text of the agreement and contemporaneous understandings of its purposes, not in our own conception of wise policy." Western Elec. III, 846 F.2d at 1427. We review the District Court's interpretation of the Decree de novo. See id.
 
 
 12
 The second means of administering a consent decree is through modification. A district court may adjust the obligations of the parties in response to unforeseen changes in circumstances, see United States v. Swift & Co., 286 U.S. 106, 114-15, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932), or in response to anticipated changes expressly identified by the parties upon entering the decree, see, e.g., United States v. American Cyanamid Co., 719 F.2d 558, 564-65 (2d Cir.1983), cert. denied, 465 U.S. 1101, 104 S.Ct. 1596, 80 L.Ed.2d 127 (1984). The District Court's ongoing authority to modify the Decree is expressly recognized in section VII.[7] We review such modifications for abuse of discretion. See System Federation No. 91, Ry. Employees' Dep't, AFL-CIO v. Wright, 364 U.S. 642, 647-48, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961); Environmental Defense Fund, Inc. v. Costle, 636 F.2d 1229, 1240 (D.C.Cir.1980).
 
 
 13
 A district court's exercise of its modification power, however, is contingent on certain procedural prerequisites. Because the parties to a consent decree have agreed to accept without litigation only those precise rights and liabilities established by the decree, the trial court must give them notice and an opportunity to be heard before revising their respective legal positions. See Hughes v. United States, 342 U.S. 353, 357-58, 72 S.Ct. 306, 308, 96 L.Ed. 394 (1952); see also Armour, 402 U.S. at 681-82, 91 S.Ct. at 1757. Thus, a court may not take action that purports only to interpret a decree but that in fact modifies it without adjudication. See ITT Continental Baking Co., 420 U.S. at 236 n. 9, 95 S.Ct. at 934 n. 9; 2 P. AREEDA & D. TURNER, ANTITRUST LAW Sec. 330, at 141 n. 8 (1978).
 
 
 14
 B. Application of the Legal Principles to the Case at Hand
 
 
 15
 The principal issue in this case is whether the District Court's ruling imposing an obligation on the BOCs to seek DOJ approval before acquiring a conditional-interest in a company engaged in an alleged restricted line of business can be upheld as either an interpretation or a modification of the Decree.[8] We conclude that it cannot.
 
 
 16
 The requirement that the BOCs obtain DOJ approval before entering into any conditional interest transaction cannot be found within the "four corners" of section II(D). Reasoning from the purpose of the Decree's line-of-business restrictions, the District Court concluded that some conditional-interest transactions make the target firms into "affiliated enterprises" of the acquiring BOCs, while some do not; the trial court intended the DOJ-authorization procedure to be a screening mechanism to distinguish prohibited from nonprohibited transactions. See Western Elec. slip op. at 3-4, reprinted in J.A. 295-96. By design, then, the DOJ-authorization requirement applies to all proposed conditional-interest transactions, regardless of their status under section II(D). Because a BOC that fails to seek DOJ authorization would be in violation of the District Court's ruling even if the completed transaction ultimately were determined not to violate the Decree's line-of-business restrictions, the trial court's ruling necessarily goes beyond the scope of the bargain embodied in section II(D).[9]
 
 
 17
 Although the District Court apparently relied exclusively on section II(D), MCI and AT & T point to section VIII(I) of the Decree as an alternative source of the DOJ-approval requirement. That section provides that the District Court
 
 
 18
 may act sua sponte to issue orders or directions for the construction or carrying out of this decree, for the enforcement of compliance therewith, and for the punishment of any violation thereof.
 
 
 19
 American Tel. & Tel. Co., 552 F.Supp. at 232. MCI and AT & T argue that once the District Court determined that some conditional-interest transactions could violate the Decree's line-of-business restrictions, section VIII(I) authorized the court to fashion the DOJ-approval requirement as a means of enforcing section II(D). See Brief of Appellee MCI at 12-13; Brief of Defendant-Appellee AT & T at 20.
 
 
 20
 We are not persuaded. At least in those cases where a BOC is proposing a conditional-interest transaction that would not create an affiliated-enterprise relationship, the procedures created by the District Court would apply even though section II(D) is in no need of enforcement. The suggestion that section VIII(I) authorizes the District Court to impose obligations aimed at prophylactic enforcement of the Decree is belied by the provision's history. Section VIII(I) was added to the Decree in response to the District Court's concern that it retain the authority "directly to enforce specific provisions of the decree and to issue orders construing its principles in more specific terms." American Tel. & Tel. Co., 552 F.Supp. at 217 (emphasis added). Nothing suggests that the parties intended to bestow on the District Court the further power to oblige the BOCs to seek Decree clarification before engaging in activities not otherwise restricted by the Decree.[10]
 
 
 21
 Under MCI and AT & T's reading of section VIII(I), the District Court would be free to modify the Decree almost at will, imposing new obligations whenever it determined that doing so would advance the purpose underlying agreed-upon obligations. This is not a fair reading of the parties' bargain. The parties expressly provided for modification of the Decree under section VII. In the absence of any expressly stated intention to the contrary, we presume that the parties expected that the exercise of the District Court's powers under this section would comport with the ordinary substantive and procedural standards that attend decree modification.[11]
 
 
 22
 These standards were not observed in this case. The District Court did not notify the parties that it was contemplating the imposition of additional legal obligations. Nor did it conduct an evidentiary hearing or make any factual findings concerning the necessity of adjusting the Decree to changed conditions. Thus, even if we accept the appellees' invitation to view the District Court's ruling as a modification, we still must reverse. See, e.g., Hughes, 342 U.S. at 357-58, 72 S.Ct. at 308; Brown v. Neeb, 644 F.2d 551, 560 (6th Cir.1981) ("Modification, of course, would require a complete hearing and findings of fact.").[12]
 
 
 23
 MCI attempts to minimize the significance of these procedural deficiencies. It contends that any claim that the court failed to afford the appellants' sufficient notice and opportunity to be heard "should be summarily rejected" because the BOCs "briefed procedural issues relating to conditional interest transactions" "[i]n response to the district court's June 26 order." Brief of Appellee MCI at 26 n. 55. MCI also suggests that the appellants waived their entitlement to an evidentiary hearing because "they never requested" one. Id.
 
 
 24
 These contentions are without merit. The June 26 order indicated that the court would treat MCI's "protest" to the DOJ report as a "motion for clarification of the decree " and sought submission of briefs on "the question of the status of a conditional interest under the decree." United States v. Western Elec. Co., Civ. Action No. 82-0192, slip op. at 2 (D.D.C. June 26, 1986), reprinted in J.A. 115 (emphasis added). The clear implication was that the trial court was about to engage in decree interpretation, not modification. To be adequate, notice of modification must inform the parties that the court is contemplating a change in their legal positions, not merely a clarification of their existing rights or obligations. See Bradley v. Milliken, 772 F.2d 266, 271-72 (6th Cir.1985). Because the appellants were never informed that the District Court was preparing to modify the Decree, MCI's suggestion that they had an obligation to request an evidentiary hearing is also misplaced.[13]
 
 
 25
 Nor can we accept the appellees' contention that the ordinary procedural requirements for modification were somehow inapplicable because the District Court merely created "procedures" for implementing existing obligations under section II(D). See Brief of Appellee MCI at 23-24; Brief of Defendant-Appellee AT & T at 18-19. The District Court's ruling enlarged the scope of the BOCs' liabilities under the Decree; whereas before the ruling, a BOC did not have to obtain approval from anyone before entering a conditional-interest transaction that did not result in "affiliation" for purposes of section II(D), a BOC that fails to obtain DOJ approval before entering such a transaction today can be held in contempt regardless of the status of the transaction under section II(D). Whether characterized as "procedural" or "substantive," the duty to obtain DOJ approval for such transactions was not contemplated by the parties at the time the Decree was executed; therefore, this screening process cannot now be imposed on the BOCs without further adjudicatory proceedings. Cf. Delaware Valley Citizens' Council v. Pennsylvania, 674 F.2d 976, 981-82 (3d Cir.) (holding that district court can forgo evidentiary hearing only if modification does not increase scope of contemplated obligations), cert. denied 459 U.S. 905, 103 S.Ct. 206, 74 L.Ed.2d 165 (1982).[14]
 
 
 26
 Nothing we say today, of course, should be read as foreclosing the District Court from imposing the DOJ-approval requirement if it determines such a requirement to be warranted after conducting adequate modification proceedings. But absent express findings, supported by a fully developed factual record, we are not in a position to determine whether the alleged benefits associated with a DOJ-screening process are sufficient to justify enlarging the BOCs' obligations under the Decree.
 
 III. CONCLUSION
 
 27
 Although administering a consent decree calls upon a district court to exercise sound judgment and discretion, the scope of the court's powers is confined. The court may enforce the obligations agreed to by the parties. But before the court can impose any additional obligation, it must notify the parties of its intent to modify the decree and afford them an opportunity to present relevant evidence and argument on the need to do so. Because the requirement that the BOCs obtain approval from the DOJ before entering conditional-interest transactions enlarges the scope of their obligations under the Decree, and because this requirement was imposed without the procedures essential to decree modification, we reverse.
 
 
 28
 Reversed.
 
 
 
 [1]
 A third restriction--that the BOCs may not "provide any other product or service, except exchange telecommunications and exchange access service, that is not a natural monopoly service actually regulated by tariff"--was eliminated by modification. See United States v. Western Elec. Co., 673 F.Supp. 525, 597-99 (D.D.C.1987), appeal pending, No. 87-5388 (D.C.Cir. argued Dec. 6, 1989)
 
 
 [2]
 The District Court has established waiver-request procedures, which include pre-request review by the DOJ. See United States v. Western Elec. Co., 592 F.Supp. 846, 873-74 (D.D.C.1984), appeal dismissed, 777 F.2d 23 (D.C.Cir.1985)
 
 
 [3]
 Although neither the District Court in its opinion nor the parties in their briefs expressly define "conditional interest," we take the term to refer to an equity interest that vests either automatically upon certain contingencies or upon the voluntary election of the acquiring BOC
 
 
 [4]
 Under the terms of the proposed transaction, NYNEX was to pay $10 million for the right to acquire the stock on or before July 1, 1988, and was to effectuate the acquisition by discharging the debt incurred by Tel-Optik in the construction of its cable system. NYNEX's right to exercise its purchase option was itself contingent on FCC approval of the transaction and on the District Court's grant of a section VIII(C) waiver. See J.A. 65-66
 
 
 [5]
 Specifically, the District Court instructed the DOJ to approve proposed transactions only upon determining "(1) that the investment is relatively minor; (2) that occurrence of the contingency is genuinely in question; and (3) that the [BOC] clearly lacks the ability, the incentive, or both, to disadvantage the target company's competitors." Id
 
 
 [6]
 The District Court ultimately refused to issue a waiver when NYNEX sought to exercise its option to acquire Tel-Optik. See United States v. Western Elec. Co., 1989-1 Trade Cas. (CCH) p 68,434, 1989 WL 53800 (D.D.C.1989). NYNEX did not appeal this ruling
 
 
 [7]
 Jurisdiction is retained by this Court for the purpose of enabling any of the parties to this [Decree] ... to apply to this Court at any time for such further orders or directions as may be necessary or appropriate for the construction or carrying out of this [Decree], for the modification of any of the provisions hereof, for the enforcement of compliance herewith, and for the punishment of any violation hereof
 American Tel. & Tel., 552 F.Supp. at 231.
 
 
 [8]
 BellSouth also appeals from a statement in the District Court's opinion suggesting that a BOC must obtain a section VIII(C) waiver before acquiring an equity interest in a firm engaged in a proscribed line of business. See Western Elec., slip op. at 6, 7, reprinted in J.A. 298, 299. In our view, this statement, which was tied expressly to the prospect that NYNEX would acquire 100% of Tel-Optik's publicly traded stock, presents no appealable issue. Because the status of less extensive acquisitions was neither briefed by the parties nor addressed by the trial court, we do not believe that the District Court's statement represents its "final word" on whether the BOCs must obtain section VIII(C) waivers for all equity-interest transactions. Nor do we view this statement as creating substantive obligations independent of those contained in the Decree itself. Consequently, the language in the trial court's opinion is not appealable as either a "final decision[ ]" under 28 U.S.C. Sec. 1291 (1982) or as an "[i]nterlocutory order ... granting, continuing, modifying, refusing to dissolve or modify [an] injunction[ ]" under 28 U.S.C. Sec. 1292(a)(1) (1982). See United States v. Western Elec. Co., 777 F.2d 23, 25-30 (D.C.Cir.1985). We therefore dismiss this aspect of BellSouth's appeal
 
 
 [9]
 Because even the appellees concede that not all conditional-interest transactions make the target firm into an "affiliated enterprise" under section II(D), and because the District Court's ruling necessarily exceeds the scope of section II(D) even assuming that some such transactions result in affiliated-enterprise status, we need not address the question of which conditional-interest transactions in fact create a relationship subject to the Decree's line-of-business restrictions
 
 
 [10]
 Equally unconvincing is AT & T's suggestion that authority for the District Court's ruling can be inferred from the Decree's so-called "visitorial provisions." See Brief of Defendant-Appellee AT & T at 19. Under Section VI(A)(2), a BOC is obliged "[u]pon the written request of the Attorney General or of the Assistant Attorney General in charge of the Antitrust Division" to submit to the DOJ "written reports ... with respect to any matters contained in" the Decree. American Tel. & Tel. Co., 552 F.Supp. at 230. Even assuming section VI(A)(2) authorizes the District Court to direct the DOJ to exercise its visitorial powers with regard to all transactions of a particular class, this provision cannot support the trial court's ruling in this case; the disputed screening mechanism obliges the BOCs not merely to notify the DOJ of proposed conditional-interest transactions but also to obtain the DOJ's approval
 
 
 [11]
 Through section VIII(C), the parties did expressly provide a substantive standard for evaluating motions to remove the Decree's line-of-business restrictions. Because the District Court's ruling in this case adds to, rather than subtracts from the BOCs obligations, section VIII(C) cannot be relied upon to support the DOJ-approval requirement. We need not and do not express any view on what procedures the District Court must observe in entertaining motions under section VIII(C)
 
 
 [12]
 Although we need not exhaustively define the procedural requirements necessary for decree modification, we hold that, at a minimum, the District Court must (1) furnish specific notice that it is contemplating the imposition of obligations in addition to those contained in the Decree; (2) provide the parties an opportunity to present relevant evidence on both the need for the additional obligations and the proper character of these obligations; and (3) issue specific findings in support of its determination that modification is warranted under the applicable substantive standard
 
 
 [13]
 MCI's contention that the appellants "briefed procedural issues relating to conditional interest transactions" also misses the mark. The BOCs addressed only the issue of whether such transactions would require a section VIII(C) waiver, not whether they should be subject to additional procedural obligations not contained in the Decree. Cf. Bradley, 772 F.2d at 271 ("[A]lthough the parties had an opportunity to address the district court as a general matter, they lacked an opportunity to address it on the specific subject of the district court's action.")
 
 
 [14]
 Because under the District Court's ruling, DOJ approval obviates the need for a section VIII(C) waiver, the appellees maintain that the BOCs "should be grateful" that the court fashioned a screening mechanism that relieved the BOCs of the need to obtain approval from the court. Brief of Defendant-Appellee AT & T at 20; see Brief of Appellee MCI at 25-26. This argument mistakenly assumes that the District Court could legitimately make all conditional-interest transactions contingent on a section VIII(C) waiver or some other form of judicial permission, even when those transactions do not result in "affiliation" for purposes of section II(D). As we have explained, the parties did not contemplate that the BOCs would need anyone's permission to engage in transactions outside the scope of the Decree's line-of-business restrictions. The appellees also suggest that the screening procedure established by the District Court benefits the BOCs by letting them know in advance which conditional-interest transactions can be undertaken without risk of liability under the Decree. In the absence of the DOJ-approval requirement, however, nothing prevents a BOC from voluntarily seeking the DOJ's opinion on the lawfulness of a proposed transaction, as NYNEX did in this case